UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DONNA W.

         **Plaintiff,**

    v.              6:19-CV-81
                    (FJS)

COMMISSIONER OF SOCIAL SECURITY,

         **Defendant.**

_____

**APPEARANCES**         **OF COUNSEL**

**OFFICE OF PETER W. ANTONOWICZ**  **PETER W. ANTONOWICZ, ESQ.**
148 West Dominick Street
Rome, New York 13440
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**  **HUGH DUN RAPPAPORT, ESQ.**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff Donna W. brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Act"), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for benefits. *See generally* Dkt. Nos. 1, 12. Pending before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 12, 16.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff applied for benefits on December 11, 2015, alleging disability as of November 30, 2015. *See* Administrative Record ("AR"), Ex. 1D at 143. Plaintiff filed a timely request for a hearing on May 4, 2016. *See* AR, Ex. 2B at 80. A video hearing was held on December 11, 2017, before Administrative Law Judge David Pang (the "ALJ"). *See* AR at 34-63. Plaintiff's attorney, Mr. Antonowicz, represented her at the hearing, and a vocational expert, Jennifer Guediri, testified.[1] *See id.* at 34.

On April 2, 2018, the ALJ issued a written decision in which he made the following findings "[a]fter careful consideration of the entire record…"

1) Plaintiff "has not engaged in substantial gainful activity since November 30, 2015, the alleged onset date."

2) Plaintiff "has the following severe impairments: lumbar to thoracic scoliosis, lumbar degenerative disc disease, cervical degenerative disc disease, thoracic degenerative disc disease, and asthma."

3) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1."

4) Plaintiff "has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). She can sit for six hours, and stand or walk for four hours, in an eight-hour workday. [Plaintiff] requires the opportunity to change position at the workstation every half hour; during this time she would not be off-task. [Plaintiff] can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. [Plaintiff] can occasionally tolerate atmospheric conditions such as concentrated dusts, fumes, and gases, and can occasionally tolerate extremes of heat and cold."

5) Plaintiff "is capable of performing past relevant work as a cashier and rental clerk. This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity."

---

[1] The Hearing Transcript names the vocational expert as "Ms. Scuderi," but it appears that the expert was actually Ms. Guediri.

6) Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 30, 2015, through the date of this decision."

*See* AR at 20-27 (citations omitted).

The ALJ's decision became the Commissioner's final decision on December 19, 2018, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 8. Plaintiff then commenced this action on January 22, 2019, filing a supporting brief on July 30, 2019. *See* Dkt. Nos. 1, 12. Defendant filed a response brief on October 15, 2019. *See* Dkt. No. 16.

In support of her motion, Plaintiff argues that the ALJ committed errors of law in determining her residual functional capacity ("RFC") by failing to follow the "treating physician rule" and that the ALJ improperly evaluated her subjective allegations of disabling pain. *See* Dkt. No. 12 at 1.

## III. DISCUSSION

### A. Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a de novo review.'" *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (Summary Order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial

evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for at least twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

1) The ALJ first determines whether the claimant is engaged in SGA. *See* C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).

2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id.*

3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).

4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(f).

5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then she is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive benefits if she cannot perform any alternative gainful activity. *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted).

**B. ALJ's RFC finding**

Plaintiff argues that the ALJ failed to follow the "treating physician rule" when he formulated his RFC finding. *See* Dkt. No. 12 at 9-14. "That rule mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. § 416.927(d)(2)). However, treating physicians' opinions are "'not afforded controlling weight where … the treating physician issued opinions that are not consistent with other substantial evidence in the record .…'" *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (Summary Order) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curium)). An ALJ may also properly afford less than controlling weight to a treating physician's medical source statement where the "medical source statement conflict[s] with his own treatment notes[.]" *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (Summary Order).

An ALJ who refuses to give controlling weight to a treating physician's opinion "must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). These factors include the following: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id.* (citation omitted). The Second Circuit has held, however, that ALJs are not required to evaluate each of these factors. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (Summary Order) (citation omitted).

In this case, Plaintiff argues that the ALJ erred in failing to give Drs. Lapinsky and Antonevich's opinions controlling weight and, instead, only affording them "minimal weight." *See* Dkt. No. 12 at 11. The ALJ noted that Drs. Lapinsky and Antonevich, providers with Slocum-Dickson, signed medical source statements in July and November 2016 indicating, among other things, that Plaintiff could lift 10 pounds or less, could stand or walk 10 minutes at a time and less than one hour in a day, could sit 10 minutes at a time and less than one hour per day, would miss more than four days per month, and would be off-task over 50% of the day due to pain, fatigue, and concentration deficits.[2] *See* AR at 24 (citing AR, Exs. 9F and 16F). The ALJ gave these opinions "minimal weight" because they were "inconsistent with regular findings on examination" that Plaintiff had good strength, range of motion, no neurological defects, no acute distress, and no difficulty moving about.[3] *See* AR at 24. Further, the ALJ found that the opinions were "inconsistent with [Plaintiff's] ongoing work activity," which suggests that she can maintain on-task behavior and attend work. *See id.*

In addition to being inconsistent with the substantial evidence in the record, Dr. Lapinsky is not a treating physician, and Defendant argues that Dr. Antonevich is not one either. Thus, the

---

[2] Plaintiff complains in Part II of her brief that the ALJ failed to account for limitations related to her off-task behavior when making his RFC finding. *See* Dkt. No. 12 at 14-15. However, the ALJ clearly noted Drs. Lapinsky's and Antonevich's opinions and gave them "minimal weight" because they were inconsistent with Plaintiff's pain as documented throughout the record. *See* AR at 24.

[3] Even if the Court found that the ALJ had not identified inconsistencies in the record, Dr. Lapinsky is not a treating physician, and Defendant argues that Dr. Antonevich is not one either. Dr. Lapinsky—who completed the medical source statements—admitted that he based his opinion exclusively on a single encounter with Plaintiff; and, therefore, he does not qualify as a "treating source." *See* AR, Ex. 9F at 280. Furthermore, at the time Dr. Antonevich co-signed the medical source statement, he had been treating Plaintiff for four and a half months (March through July of 2017) with a series of epidural steroid injections, but it does not appear that he examined Plaintiff during any of those visits. *See generally* AR, Ex. 14F at 322-355.

Court finds that the ALJ was justified in giving less than controlling weight to Dr. Lapinsky's and Dr. Antonevich's opinions.

Plaintiff further complains that the ALJ gave greater weight to Dr. Puri's opinion, even though he was only a consultative examiner. *See* Dkt. No. 12 at 11. This, Plaintiff argues, goes against the Second Circuit's warning that "'ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" *See* Dkt. No. 12 at 13 (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)); (citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).

The ALJ acknowledged Dr. Puri's opinion that Plaintiff "had mild limitations in squatting, bending, stooping, kneeling, overhead reaching, and lifting weights, and that she should not be in an environment that would increase her respiratory complaints." *See* AR at 24 (citing AR, Ex. 5F at 4-5). The ALJ only afforded this opinion "partial weight," stating that, although it was fairly consistent with Dr. Puri's examination, Plaintiff's increased pain with prolonged activities "suggests *additional limitations* in areas such as climbing and prolonged standing." *See* AR at 24 (emphasis added).

By only giving Dr. Puri's opinion "partial weight," the ALJ did not "rely heavily" on his single examination. In fact, the ALJ included limitations in the RFC finding that went above and beyond those Dr. Puri set forth in his opinion. Thus, the Court finds that the ALJ did not commit error when considering Dr. Puri's opinion.

A review of the record clearly establishes that the ALJ's RFC finding and determination that Plaintiff can perform past relevant work as a cashier or rental clerk or perform other light work as a marker, sorter, or bagger were supported by substantial evidence in the record. Therefore, the Court finds that the ALJ did not err when coming to these conclusions.

## C. ALJ's evaluation of Plaintiff's subjective complaints

Plaintiff complains that the ALJ improperly evaluated her allegations of her symptoms, including her disabling pain. *See* Dkt. No. 12 at 16. "As a fact-finder, the ALJ has 'the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence.' … Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotations omitted). "In assessing the credibility of the subjective evidence of pain and disability provided by the plaintiff's testimony, the ALJ considers the objective medical evidence and a number of other factors. SSR 96-7p." *Osborne v. Astrue*, No. 6:07-CV-0314 (LEK), 2010 WL 2735712, *7 (N.D.N.Y. July 9, 2010).

These factors include:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses to relieve pain or other symptoms …; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *8 (citing [SSR 96-7p]).

The ALJ considered Plaintiff's complaints of pain when coming to his RFC finding. *See* AR at 25. He acknowledged Plaintiff's testimony where she reported "constant pain" throughout her neck and back that worsened with prolonged sitting and standing, and that she had difficulty with dressing, lifting her dog, doing laundry, and grocery shopping. *See* AR at 22. The ALJ also noted Plaintiff's testimony that she spends much of her time on her couch shifting around to try to get comfortable, that she naps daily, that she cannot sit for long enough to watch a movie, and that she only showers once a week due to fatigue and difficulty with managing her hair. *See id.*

However, the ALJ also recognized a report by a pain management specialist that the impairments Plaintiff's imaging disclosed "could not be causing her level of pain." *See id.* at 23. The ALJ also relied on findings that Plaintiff had normal gait and station, good strength, good range of motion, no neurological deficits, negative straight-leg raise tests, and she was not in acute distress. *See id.* at 23-24.

The ALJ further relied on the fact that Plaintiff "continues to work on a part-time basis, and testified that she has not missed shifts or left work due to her impairments." *See id.* at 25. Although Plaintiff not work at a level of substantial gainful activity, the ALJ commented that she was able to maintain on-task behavior and attend work as her employers required. *See id.* at 24. For these reasons, the Court finds that the ALJ's credibility determination is not "patently unreasonable" and should not be reversed.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 12, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 16, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: December 10, 2019
Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge